■ GILBERTO URENA et al., Appellants, v BRUPRAT REALTY CORP. et al., Respondents.

This action was instituted to recover damages for personal injuries sustained by the infant plaintiff after falling from a window of his apartment. Approximately six months after a note of issue and certificate of readiness were filed, the defendants moved for an order directing the infant plaintiff to submit to a neurological examination.

While the failure to move to vacate a note of issue and certificate of readiness within 20 days of service generally constitutes a waiver of the right to conduct a subsequent physical examination where special circumstances or sufficient reason for the delay have not been established (22 NYCRR 202.21 [e]; *Sewell v Singh*, 160 AD2d 592), where, as in the instant case, no prejudice would result, a party may be relieved of its waiver *(Dominguez v Manhattan & Bronx Surface Tr. Operating Auth.,* 168 AD2d 376; *Williams v Long Is. Coll. Hosp.,* 147 AD2d 558).

The plaintiffs alleged that the infant plaintiff sustained multiple injuries in the fall, including a blunt trauma injury to the head, a cerebral contusion causing organic brain syndrome, significant brain dysfunction, loss of consciousness, headaches, blurred vision, nausea, deafness, poor recall and an inability to understand. Clearly the need for a neurological examination has been established. Also to be noted is that the plaintiffs' failure to provide the defendants with authorization to obtain the records of some of the infant plaintiff's treating physicians contributed to the delay. In addition, granting the defendants' request will not prejudice the plaintiffs since the matter remains on the trial calendar *(Dominguez v Manhattan & Bronx Surface Tr. Operating Auth., supra; Williams v Long Is. Coll. Hosp., supra).* Concur—Sullivan, J. P., Carro and Rosenberger, JJ.

Rubin, J., dissents in a memorandum as follows: The issue on this appeal, as I view it, is whether the Civil Practice Law

and Rules and the Uniform Rules for Trial Courts are to be accorded any meaning or whether counsel may disregard them without concern for the sanctions which they mandate.

It is undisputed that issue was joined in August 1986, at which time defendants demanded plaintiff's medical records. A physical examination was ordered by the court at a conference of March 1, 1989, requiring the necessary authorizations to be provided within 60 days. In compliance with this order, plaintiffs served defendants with medical records, including an authorization to obtain the records of Columbia-Presbyterian Hospital, on March 17, 1989. Conferences were held in January, March and May 1990, at the last of which plaintiff was again directed to appear for a physical examination "upon designation of doctor by defendants". No such designation was ever made. A note of issue and certificate of readiness were filed in July 1990, and another conference was held in November, at which time the case was remanded for trial with the consent of defendants' attorney. Only in January 1991 did defendants find it convenient to request, by way of order to show cause, yet another order directing plaintiff to submit to a physical examination.

The normal method of obtaining disclosure is by notice or stipulation (CPLR 3102 [b]), and the rules expressly provide that a party may be required to appear for a physical examination on notice (CPLR 3121 [a]; 22 NYCRR 202.17). Presumably, the detailed provisions for the exchange of medical reports contained in the court rules are designed to answer any question regarding the rights and obligations of parties to a personal injury or wrongful death action and to obviate the necessity for the courts to expend time supervising matters which are left to counsel, as officers of the court, to schedule at their mutual convenience. Only where there is a failure to comply with a reasonable disclosure demand need an application be made to the court (CPLR 3124), which has considerable flexibility in enforcing compliance (CPLR 3126).

The function of the note of issue is to inform the court that a matter is ready to be placed on the trial calendar (CPLR 3402 [a]; 22 NYCRR 202.21). While the rules do allow for additional pretrial proceedings, the record before us fails to reflect any "unusual or unanticipated circumstances" upon which such extraordinary relief might be predicated (22 NYCRR 202.21 [d]). Rather, it is evident from plaintiffs' bill of particulars, served prior to the initial preliminary conference of March 1, 1989, that neurological injuries were alleged, including "blunt trauma injury to head; cerebral contusion

causing organic brain syndrome; significant brain dysfunction". Defense counsel cannot, and does not claim that the need for a neurological examination became apparent only six months after the note of issue was served and filed (22 NYCRR 202.17 [g]). Nor does counsel proffer any excuse for failure to seek an order compelling plaintiffs to produce complete medical records (CPLR 3124), alleged to be "a necessary prerequisite to an adverse neurological examination." Nor does counsel explain why, given plaintiffs' asserted failure to comply with disclosure demands, no motion to vacate the note of issue was made within 20 days after its service (22 NYCRR 202.21 [e]). The patently obvious explanation for defendants' belated motion is the neglect of their rights and obligations under the rules and two court orders, which is sufficiently extensive to warrant plaintiffs' conclusion that the examination was waived by the defense.

That an independent neurological examination of the injured plaintiff is desirable and that plaintiffs will not be prejudiced thereby is not a matter of dispute. Neither is it dispositive of, or necessarily material to the disposition of defendants' application. The utility of procedural rules is expedient litigation, and the rules exist at least as much for the benefit of the courts as for the litigants or counsel. Preclusion of a party who violates their provisions from introducing otherwise material evidence is a sanction for which the rules expressly provide (CPLR 3126; 22 NYCRR 202.17 [h]).

My particular point of departure with the majority is an unwillingness to subordinate the need for judicial economy—so severely exacerbated by current budgetary and personnel constraints—to a litigant's desire to be released from the consequences of an utter disregard for orderly and expeditious litigation. The suggestion that condoning infractions of procedural rules is counterproductive to the orderly administration of justice is not new. As a leading commentator stated, the attitude of the courts "more than anything else, accounts for the high number of disclosure applications on the motion calendars. The judges lament this overload; yet it may be, ironically, that the primary fault is their own willingness to give the parties repeated chances to make disclosure" (Siegel, NY Prac § 367, at 465). At a time when the need to expedite litigation and conserve scarce judicial resources is most pressing, the majority's indulgence in defendants' neglect of this litigation conveys the unfortunate message that dilatory conduct engenders no adverse consequences.

Accordingly, I would reverse the order directing plaintiff to submit to a neurological examination and direct the parties to proceed to trial.